JOSEPH E. STANGER, INDIVIDUALLY AND T/A TIP'S TRAILER PARK, PLAINTIFF, v. LARRY RIDGWAY, DEFENDANT.

District Court
Cumberland County

May 23, 1979.

*Mr. Samuel J. Serata* for plaintiff.

*Mr. Andrew Dawkins,* per *R.* 1:21–3(c), for defendant (Camden Regional Legal Services, Inc., attorneys).

MILLER, J. S. C. (temporarily assigned). This is an opinion amplifying the reasons for orders heretofore entered in this summary dispossess action. Plaintiff-landlord's notice of appeal was not received by this court. It recently

became aware of the appeal when a slip opinion involving issues in this case was sent to it as a courtesy by plaintiff's attorney on May 8, 1979. *R.* 2:5–1(b) limits the court to 15 days from receipt of the notice of appeal to submit an amplification; however, Appellate Division jurisdiction is not lost by failure to give notice to the trial judge, the trial judge should not be precluded from filing a late amplification in the circumstance where he does not receive notice. *R.* 1:1–2.

The two orders which are the apparent subject of appeal are this court's order of June 1978 permitting trial of the matter, including the habitability defense, without requiring a formal escrow, and the order of August 1978 dismissing the action when defendant paid the full amount of rent due and owing after the entry of the judgment for possession but before three days expired.

The relevant facts as to the issue of whether the habitability defense requires a formal escrow of funds are that the attorneys for the parties believed they had reached a settlement agreement in the summer of 1977. Defendant refused to consent after changes were made in the order prepared by his counsel after the proposed order was sent to plaintiff's counsel. The case remained dormant until May 1978, when plaintiff moved to enforce the settlement. Because of the problems in agreeing on the order, the court concluded that a settlement had not been reached with full consent of the parties and ordered a trial. See *Stonehurst at Freehold, etc. v. Freehold Tp. Comm.*, 139 *N. J. Super.* 311 (Law Div. 1976). At the time of the hearing on the motion to enforce settlement, defendant represented that he intended to raise a habitability defense and that he had been accumulating the rent monies in a savings account in his own name. Upon examining the deposit book this court decided that, notwithstanding that half the money had been deposited during the previous two weeks, the monies were sufficient to meet the alleged deficiency in rental payments and that the

habitabilty defense would be included in the trial of the action.

Plaintiff objected on the basis that the escrow did not involve a loss of control by defendant and was therefore not adequate to protect plaintiff-landlord and to insure that the defense was raised in good faith.

In *Edmond v. Waters,* 149 *N. J. Super.* 579 (App. Div. 1977), the court held that it is improper, when trial is *imminent* and no further delay contemplated, to require a deposit of unpaid rent. *Id.* at 581. This decision was reached in reliance on the following language from *Marini v. Ireland,* 56 *N. J.* 130 (1970):

> We realize that the foregoing may increase the trials and appeals in landlord and tenant dispossess cases and thus increase the burden of the judiciary. By way of warning, however, it should be noted that the foregoing does not constitute an invitation to obstruct the recovery of possession by a landlord legitimately entitled thereto. It is therefore suggested that if the trial of the matter is delayed the defendant *may be required* to deposit the full amount of unpaid rent in order to protect the landlord if he prevails. [At 147]

Reading these two cases together leads this court to conclude that when trial is *not* imminent, it is a judge's discretionary function to determine whether to require "a deposit." The Supreme Court's dictum in *Marini v. Ireland* is *a suggestion* that "a deposit" may be required. The term "deposit" in this context is not yet defined. The only type of "deposit" that is clearly erroneous according to Appellate Division decisions yet rendered is to require payment to the landlord, *Edmond v. Waters, supra,* 149 *N. J. Super.* at 581. Because it is apparent to this court that when "further delay [is] contemplated," *id.,* it has discretion to require "a deposit" the nature of which is yet undefined, it has discretion to decide the type of "deposit" that is required.

One reason for requiring "a deposit" that has been expressed in our case law is to protect the landlord if he pre-

vails, since trials are normally adjourned to allow the landlord time to make any necessary repairs. *Marini v. Ireland, supra; Edmond v. Waters, supra;* 23 *N. J. Practice (LeWine, Landlord and Tenant Law)* (3 ed. 1978), § 3290. Another reason shown in *Marini v. Ireland, supra,* is to protect the judiciary from becoming overburdened with habitability defenses in summary dispossess proceedings. It is apparent that to routinely permit the defense in tenancy actions may destroy the purposes of speedy recovery of premises or resolution of disputes inherent in the summary dispossess procedure. To permit a tenant to raise the defense in the dispossess action when he shows no ability to pay could very often result in the case becoming moot if, for example, the court determined that 50 or 75% of the alleged rental deficiency is due and owing and the tenant is unable to pay even the reduced amount. This is especially burdensome because the summary dispossess judgment and findings are not *res judicata* in a later action for unpaid rent under the lease or contract damages by either party. *Terrill Manor, Inc. v. Kuckel,* 94 *N. J. Super.* 25 (App. Div. 1967); *Academy Spires v. Jones,* 108 *N. J. Super.* 395 (Law Div. 1970); *Burns v. WestAmerica Corp.,* 137 *N. J. Super.* 442 (Cty. D. Ct. 1975).

█ The key point is that the tenant show sincerity of defense and the ability to pay. This can be satisfied by depositing the money into court, or depositing it with the attorney for the tenant, or by proving to the court that sufficient funds are deposited in a savings account to pay the landlord in the event the defense is unsuccessful. Any one of the three approaches is satisfactory to this court in light of the key purposes: to insure the ability to pay for the protection of the landlord, who is without the use of the premises or their rental income during the pendency of the action and to protect the court from being overburdened with actions destined to become moot.

█ The reason for requiring a "deposit" in this case was that the action was instituted in May 1977. One year later

the proposed settlement failed and the court was informed of the intent of defendant to raise the habitability defense. In light of the lapse of a year that had already occurred and the nature of the defense that required a surveyor to examine the lot and mobile home involved, it was necessary to require proof of a deposit of the rental alleged to be due and owing. As it happened, the case was adjourned from the original date set for hearing and finally heard on July 17, 1978, about seven weeks after the May motion. Thus, unlike *Edmond v. Waters, supra,* substantial time had already elapsed and further delay was contemplated and did in fact occur.

The deposits in the savings book clearly illustrated that the tenant had the ability and intention to pay if unsuccessful. As the prior discussion in this opinion points out, *nothing further is required.*

The following are the relevant facts as to the dismissal. The case was heard by another judge on July 17, 1978. After viewing the premises and hearing the testimony, that judge concluded that the premises were 100% habitable and entered judgment for possession late that afternoon. The minutes reflect that the warrant for removal was to issue on request, but that if the tenant paid, the action would be dismissed.

The warrant was issued on July 19, 1978, two days after the entry of the judgment of possession. On that same day defendant drew a check for the amount due and owing, plus costs, and presented it to plaintiff's attorney on July 20, who caused a cashier's check to be drawn on July 21 to establish to his satisfaction that the check was good.

■ The issuance of the warrant for removal before the *expiration* of three days was beyond the authority to issue such warrants conferred by *N. J. S. A.* 2A:18–57. Words and phrases in our statutes must be given their generally accepted meaning. *N. J. S. A.* 1:1–1; *Saveriano v. Saracco,* 97 *N. J. Super.* 43, 46 (App. Div. 1967). The warrant should not have issued until three days had expired — in

this case until July 21. July 21 was also the day upon which plaintiff satisfied himself that the check tendered on July 20 was sufficient. This interpretation of the time requirement is consistent with *R.* 1:3–1, computation of time under court rules, which states that in computing any period of time "the day of the act or event from which the designated period begins to run is not to be included."

The remaining question is whether payment before the proper issuance of the warrant satisfied the provisions of *N. J. S. A.* 2A:18–55 that payment of the rent claimed in default together with accrued costs on or before entry of final judgment shall stop all proceedings.

New Jersey courts that have directly faced the issue have split. *Workman's Automatic Music Service, Inc. v. New Colony Diner, Inc.,* 136 *N. J. Super.* 131 (Cty. D. Ct. 1975), held that payment must be made on or before closing of the court session on the day the judgment of possession is issued. *Saveriano v. Saracco, supra,* 97 *N. J. Super.* at 47, supports that position. *Academy Spires, Inc. v. Jones, supra,* 108 *N. J. Super.* at 400, interpreted *Saveriano* and *N. J. S. A.* 2A:18–57 to mean that "the tenant as a practical matter has three days in which to pay the amount he is in default in order to remain in possession." The most recent opinion on the subject, although not decided or published at the time this case was before the court, contains the most extensive analysis of the problem posed by payments within three days of the judgment of possession. The Bergen County District Court, Judge Taylor, concluded from the legislative history that final judgment must mean the issuance of the warrant, which cannot be accomplished until three days have expired. Hence, payment in that period strips the court of the power to proceed under *N. J. S. A.* 2A:18–55. *Azar v. Jabra,* 167 *N. J. Super.* 543 (Cty. D. Ct. 1979). A further reason for the result advanced by that court was stated as "the general policy of the law to prevent forfeitures, especially in default of a payment of money." *Id.* at 553.

While it is clear that the entire scheme of protection of tenants' rights is bottomed on the tenant paying the rent, it is equally true that once a tenant pays his rent a whole host of statutory rights becomes involved in his behalf. The interest of the Legislature is crystal clear that payment of the rent gives such protection. To hold that the tenant who is ready, able and willing to pay is debarred from his rights is too hypertechnical. The law is intended to work justice, not defeat it.

In lieu of reiterating the statutory and policy positions set forth in *Jones* and *Jabra,* this court adopts them. Payment directly to plaintiff's attorney satisfied the payment provision of *N. J. S. A.* 2A:18–55, although not literally. Payment to the clerk affords the tenant protection from the issuance of the warrant and should be done for that reason alone. It is also a statutory mandate which must be followed in all but the most unusual circumstances. Here defendant was in an unusual circumstance because whether he was aware of the fact or not, the warrant issued prematurely. Plaintiff received what was due him plus costs, which is the essence of the proceeding. The court thus had no jurisdiction to proceed and the action was necessarily dismissed.